**Entered on Docket**
**June 19, 2012**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: June 18, 2012

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 11-32522DM |
| ROLAND LUIS CAMPOS, | ) |
| | ) |
| Debtor. | ) Chapter 7 |
| _____ | ) |
| ARTHUR STOPES, III, | ) Adversary Proceeding |
| | ) No. 11-3193DM |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROLAND LUIS CAMPOS, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MEMORANDUM DECISION RE NONDISCHARGEABILITY**

**I. INTRODUCTION**[1]

The Plaintiff, Arthur Stopes, III ("Stopes"), filed a

complaint on October 6, 2011, against Debtor Roland Luis Campos

("Campos"), seeking to except from discharge Campos's debt to him

under section 523(a)(4).[2] For the reasons stated below, the court

finds the existence of an express trust and defalcation while

_____

[1] This Memorandum Decision constitutes the court's findings
of fact and conclusions of law pursuant to Federal Rules of
Bankruptcy Procedure, Rule 7052(a).

[2] Unless otherwise indicated, all chapter, section, and rule
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and
to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-1-

Campos was acting in a fiduciary capacity; therefore, his debt to Stopes is nondischargeable under section 523(a)(4).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Stopes and Campos have been acquaintances since meeting each other some time before 1998. On February 25, 2002, Stopes sent a letter to Campos outlining an "interim banking arrangement," whereby Stopes was to give checks to Campos to cash and keep "for safe retention" ("Letter"). (Exhibit 1). A week later, on March 4, 2002, Campos formalized the arrangement with Stopes by signing an Agreement and Declaration ("Agreement"), which had the word "Fiduciary" printed under the signature line (Exhibit 2). These two items comprised the documentation of this banking arrangement. In the Agreement, Campos agreed to cash checks and hold funds for Stopes in Campos's personal bank account, to keep a parallel record of Stopes's funds, and to give notice to Stopes of any changes affecting the specified bank account or Campos's mailing location.

Evidence showed that ten checks were issued to "Arthur Charles Stopes or Roland Campos" in various amounts in 2002, and Campos signed accompanying notes to the checks indicating the deposits were in accordance with the Agreement. (Exhibit 3). An email dated August 23, 2007, showed that Campos represented he held a total of $51,328.06 in payments from Stopes. (Exhibit 4).

On December 16, 2007, Campos signed and gave Stopes a statement acknowledging that he no longer held any of $51,328.06 amount for Stopes, and that the funds were misused by Campos. (Exhibit 6). Subsequently, Campos made several payments to Stopes on the outstanding amount. Both parties agree that the current

-2-

outstanding amount of the debt is $42,421.10. (Exhibit 14). In response to the Plaintiff's Request for Admissions, Campos admitted to the outstanding amount currently in question and that the missing funds were used for Campos's personal expenses. (Exhibit 14).

Campos filed for Chapter 7 bankruptcy on July 7, 2011, and Stopes subsequently commenced this adversary proceeding on October 6, 2011, to determine the nondischargeability of the outstanding amount of this debt. On March 5, 2012, Stopes filed a motion for summary judgement against Campos. The court held a hearing on the motion on April 13, 2012, and then granted the motion in part and denied it in part, narrowing the scope of the inquiry at trial to two issues related to finding an express trust:

(1) Was there an intention to create a trust?

(2) If there was a trust, was it created for a lawful purpose?

A trial was conducted on June 4, 2012, on the two issues above, and the court took the matter into submission.

### III. DISCUSSION

The three elements for finding a nondischargeable debt under section 523(a)(4) are: (1) that an express trust was in existence, (2) that a debt was created by fraud or defalcation, and lastly, (3) that the debtor was acting in a fiduciary role to the creditor at the time the debt was created. Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997). In a section 523(a)(4) action, the plaintiff has the burden of proving the existence of a trust and any defalcations by a preponderance of the evidence. Punton v. Chapman (In re Chapman), 125 B.R. 284, 287 (Bankr. S.D.

-3-

Cal. 1991) (citing <u>Grogan v. Garner</u>, 495 U.S. 279, 284 n.11 (1991)).

**(1) Existence of an Express Trust**

While the meaning of "fiduciary" in the context of section 523(a)(4) is an issue of federal law, state law is used to determine if a trust exists. <u>Lewis v. Short (In re Short)</u>, 818 F.2d 693, 695 (9th Cir. 1987). In California, an express trust requires the following: (1) a present intent to create a trust, (2) a trustee, (3) trust property, (4) a proper legal purpose, and (5) a beneficiary. <u>Honkanen v. Hopper (In re Honkanen)</u>, 446 B.R. 373, n.6 (9th Cir. BAP 2011) (citing Cal. Prob. Code §§ 15201-15205).

On the issue of proper legal purpose, Campos argued that Stopes had created the banking arrangement with him in order to evade federal income taxes. (Def. Trial Br.). Stopes testified that he did not believe he owed any taxes at the time the documents were signed and that he created the banking arrangement because he did not trust banks. Because Stopes requested that the payments be placed in a bank account under Campos's name, it is unlikely that Stopes's distrust of banks is the true reason for establishing the arrangement. While Campos offered circumstantial evidence about Stopes's motives during the trial, he did not prove that the avoidance of taxes was one of Stopes's reasons for creating the arrangement. Therefore, the court does not find an illegal purpose in the formation of the agreement.

Separately, when looking at intent, California does not require any specific words to create a trust. <u>Kornbau v. Evans</u>, 66 Cal. App. 2d 677, 684 (1944). Whether there was intention to

-4-

create a trust is a question of fact and is ascertained from the parties' words and actions concerning the transaction. Petherbridge v. Prudential Sav. & Loan Assn., 79 Cal. App. 3d 509, 517 (1978). Additionally, where the transfer of property or money is intended to create a trust, the payor retains the beneficial interest in the money paid. Id.

In the present case, the intention of Stopes to create a trust is expressed in the two documents that govern the arrangement. First, the language in the Letter demonstrated Stopes's intent to create a trust because he requested Campos's assistance for "safe retention of his money" for Stopes's "personal use." (See Exhibit 1). This language is consistent with an intention on Stopes's part to retain the beneficial interest in the payment. Second, the language in the Agreement, which the Campos signed, also specified that the amounts deposited would be reserved for Stopes's use. (See Exhibit 2). Additionally, Stopes testified during the trial that he intended for this agreement to be a trust, and this statement was uncontroverted.

Campos argued that the Letter and the Agreement were inconsistent with each other based on a sentence in the Letter from Stopes that stated "If my monies may be of some assistance to you, possibly in a mutually beneficial way, could we work together toward that end?" (Exhibit 1). In Petherbridge, the court did not find a trust because the language of the agreement gave the payee the unilateral power to choose between holding the payments in trust or applying the funds to a promissory note held by the payee. See 79 Cal. App. 3d at 520 ("Such a power is inconsistent

-5-

with the fiduciary duties of a trustee and . . . suggests
defendant was not truly intended to be a trustee."). This case is
distinguishable from <u>Petherbridge</u> because the language Campos
relies on does not show that the Stopes granted him power that was
inconsistent with the duties of a trustee. (<u>See</u> Exhibit 1). The
statement is only an agreement to possibly agree in the future.
The sentence by itself does not grant any rights to Campos to
unilaterally use the funds for his own benefit, and other language
in the two documents indicates a trustee-beneficiary relationship.
(<u>See</u> Exhibit 1; Exhibit 2). In addition, by signing the Agreement
with "Fiduciary" appearing under his name (Exhibit 2), cashing the
checks for Stopes with written confirmation that the actions were
done in accordance with the Agreement (Exhibit 3), and
representing by email that he held a specific amount of money for
Stopes (Exhibit 4), Campos's actions indicated he intended to take
on the enumerated responsibilities in an arrangement consistent
with an express trust.

**(2) Debt was Created by Defalcation**

Defalcation in section 523(a)(4) is a "misappropriation of
trust funds or money held in any fiduciary capacity; [the]
failure to properly account for such funds." <u>Lewis v. Scott (In</u>
<u>re Lewis</u>), 9 F.3d 1182, 1186 (9th Cir. 1996). This includes "the
innocent default of a fiduciary who fails to account fully for
money received," so even if Campos's actions were completely
innocent, which they do not appear to be, defalcation can still
exist. <u>See</u> <u>id.</u> Campos admitted in email on August 23, 2007, that
he held $51,328.06 for Stopes through this private arrangement;
that as of December 16, 2007, he no longer held any of these funds

-6-

for Stopes; and that the funds were misused.  (Exhibit 4; Exhibit 6).  Because Campos did not present evidence to otherwise account for the funds he received from Stopes under this arrangement, and because he admitted to misusing the funds for personal expenses, this court concludes that the debt in question was created by defalcation.

**(3) Debtor was in a Fiduciary Role to the Creditor**

If there is an express trust between the debtor and another party, and the debtor has trustee status, then the debtor is considered a fiduciary under section 523(a)(4).  <u>Woodworking Enter., Inc. v. Baird (In re Baird)</u>, 114 B.R. 198, 202 (9th Cir. BAP 1990).  Also, the fiduciary obligations arising from the trust agreement "must be imposed before any wrongdoing." <u>Ragsdale v. Haller</u>, 780 F.2d 794, 796 (9th Cir. 1986).  Because an express trust exists here under California law for the reasons above, the Campos was in a fiduciary role beginning from the signing of the Agreement and Declaration on March 4, 2002 (Exhibit 2) and was in the fiduciary role when he misappropriated the funds.  Consequently, defalcation exists under section 523(a)(4).

**(4) Financial Elder Abuse**

Stopes alleged that Campos's actions constituted financial abuse of an elder under Cal. Welf. & Inst. Code section 15610.30, and consequently, he is entitled to an award of his attorney's fees under section 15657.5(a), which provides for an award of attorney's fees and costs to the winning plaintiff in elder financial abuse cases.  The court agrees with this request.

Cal. Welf. & Inst. Code section 15610.30 was amended in 2008, and the amendment was considered "a material change in the

-7-

statutory definition of financial abuse." <u>Das v. Bank of Am.,</u> <u>N.A.</u>, 186 Cal. App. 4th 727, 737 (2010). Because Campos's actions occurred before the effective date of the amendment, January 1, 2009, this court evaluated this claim under the previous version of the statute that was effective at the time of his actions. <u>See</u> <u>id.</u> ("As the 2008 amendments to the statutory scheme were substantive . . . and the legislature did not state that the amendments were retroactive in effect, they are inapplicable to appellant's claims.").

Financial abuse under the unamended section 15610.30 is defined as when a person "takes, secretes, appropriates, or retains real or personal property of an elder . . . to [sic] a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1). Wrongful use is defined as performing the above actions in bad faith. § 15610.3(b) (amended 2008). Under section 15610.3(b)(1), a person is deemed to have acted in bad faith if he "knew or should have known that the elder . . . had the right to have the property transferred or made readily available to the elder . . . or to his or her representative."

Campos's actions were performed in bad faith under the statutory definition. In his fiduciary capacity under the Letter and Agreement, he knew or should have known that the beneficial interest remained with Stopes, and therefore Stopes retained the right to have the property transferred or made readily available for his personal use. (<u>See</u> Exhibit 1; Exhibit 2). Additionally, Campos's misuse of Stopes's payments constitutes "appropriating"

-8-

under the statute using the plain dictionary meaning of the word.[3] See Negrete v. Fidelity & Guar. Life Ins. Co., 444 F.Supp. 2d 998, 1002 n4 (C.D. Cal. 2006) (noting that the plaintiff's allegations are sufficient to state a claim for financial elder abuse, using the ordinary dictionary meaning of "taking"). Therefore, Campos's admission of misusing Stopes's payments qualified as financial elder abuse under the statutory definition.

### IV. CONCLUSION

Based on the foregoing reasons, Stopes's claim against Campos shall be nondischargeable under section 523(a)(4), and Stopes is entitled to a judgment in the amount of $42,421.10. The evidence shows both the existence of an express trust and that defalcation occurred while Campos was in a fiduciary role for this trust.

Attorney's fees will be awarded to Stopes based on a claim for financial elder abuse, as defined in section 15610.30 of the Cal. Welf. & Inst. Code. Plaintiff's counsel should file a motion for attorney's fees within 14 days of entry of judgment, in accordance with N.D. Cal. Civ. L.R. 54-5, incorporated by B.L.R. 1001-2(a). Plaintiff's counsel should upload an order consistent with this memorandum decision and comply with B.L.R. 9021-1.

**END OF MEMORANDUM DECISION**

---

[3] (3) To take or make use of without authority or right. (Merriam-Webster Online), see: http://www.merriam-webster.com/dictionary/appropriating, last visited June 17, 2012.

-9-

1                        COURT SERVICE LIST

2   Roland Luis Campos
    2582 31st Avenue
3   San Francisco, CA 94116

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28